UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:12-CV-00078-TBR

BERNICE F. GREENE                                                                                    Plaintiff

v.

DR. OLES B. DROBOCKY, DMD MS, and                                                    Defendants
DROBOCKY ORTHONTICS, PSC


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendants Dr. Oles B. Drobocky, DMD MS and Drobocky Orthodontics, PSC's (collectively "Defendants"), Motion for Summary Judgment. (Docket No. 93.) Plaintiff Bernice F. Greene has responded. (Docket No. 112.) Defendants have replied. (Docket No. 116.) This matter is now fully briefed and ripe for adjudication. For the following reasons, the Court will **GRANT in part** and **DENY in part** Defendants' Motion for Summary Judgment. (Docket No. 93.) The only remaining claim for trial is Plaintiff's Fraud by Inducement claim.

Plaintiff has also made a Motion for Summary Judgment. (Docket No. 95.) Defendants have responded. (Docket No. 112.) Plaintiff has replied. (Docket No. 117.) This matter is now fully briefed and ripe for adjudication. For the following reasons, the Court will **DENY** Plaintiff's Motion for Summary Judgment. (Docket No. 95.)

Plaintiff has made a Motion to Exclude Defendants' Expert Dr. Scott Bauries. (Docket No. 100.) Defendants have responded. (Docket No. 110.) For the following

reasons, the Court will **GRANT in part** and **DENY in part** Plaintiff's Motion to Exclude. (Docket No. 100.)

Defendants have made a Motion to Exclude Plaintiff's Expert Mark Johnson. (Docket No. 102.) Plaintiff has responded. (Docket No. 115.) For the following reasons, the Court will **GRANT in part** and **DENY in part** Defendants' Motion to Exclude. (Docket No. 102.)

BACKGROUND

Plaintiff Bernice F. Greene was employed by Defendants from February 26, 2003, until approximately December 31, 2011.[1] (Docket No. 71, at 4.) Eventually, she performed the duties of both a "Scheduling Coordinator" and "Executive Assistant," in addition to handling payroll and accounts receivable/accounts payable matters. (*Id*. at ¶ 18.) As part of her responsibilities, she maintained personnel files and communicated "constantly" with PenSys, a third party plan administrator, regarding relevant employee information. (Docket No. 93-3, at 2.)

In 2002, Defendants implemented a company Defined Benefits Plan offering, as an employee benefit, the opportunity for employees to save for their retirement. (Docket No. 70, at 3.) Plaintiff contends that when she was hired in 2003 "she was informed by Defendants that one of her benefits was participation in a Defined Benefits Plan in which she could begin vestment after only one year and become fully vested

---

[1] "At some point in 2005, Greene left Drobocky Orthodontics for alternative employment" and "[l]ater that year, Greene began working part time with Drobocky Orthodontics doing accounts payable." (Docket No. 93-23, at 1; *see also* Docket No. 93-1.) Defendants state that in 2005 Drobocky hired Plaintiff, who at that point was only working on a part-time basis doing accounts payable, to work full time as his executive assistant. (Docket No. 93-23, at 1.)

after five years of service," and that she was originally included in the Plan. (Docket No. 70, at 4.) Subsequently, she alleges that Defendants engaged in a pattern of unlawful discrimination against older employees in the company, those approaching and exceeding the age of 50, by denying them participation in the Plan based on their age in order to maximize Drobocky's own share of funds invested in the Plan. (*Id*. at 3.)

Specifically, she states that in 2005 a "contribution distribution" sheet was calculated and provided to her showing the amount of Company funds that would have been contributed on her behalf.[2] (*Id*. at 5.) Thereafter, Plaintiff alleges that Defendants informed her that, because of her age, she would be removed from the Plan, but that Dr. Drobocky told her "I will take care of you." (*Id*.) She understood this to mean she would have her retirement compensated at the same value as it would be under the Plan. (*Id*.)

On the other hand, Drobocky has contended throughout this litigation that Plaintiff was never intended to be in the Plan and upon her "return" to Drobocky Orthodontics as a full time executive assistant she was informed of her exclusion. (Docket No. 93-4.) However, the 2003 Adoption Agreement only excluded the positions of "clinical liaisons, clinical organizers, sales directors, and the owner's spouse," not the position of executive assistant. (*See* Docket No. 98-13.)

In April 2006, Drobocky obtained a benefit statement and realized Plaintiff was a participant in the Plan. (Docket No. 70, at 5.) As a result, Drobocky contacted Kathy Theilbar at Pensys, the third party plan administrator, and "informed her that Greene

---

[2] Documentation confirms that in early 2005 Plaintiff was still included in the Plan.

was excluded from the Plan because she was an Executive Assistant and because 'she really wasn't part of the practice.'" (*Id*.; *see also* Docket No. 98-17.) Eventually, after contacting a Regional Manager and explaining that it was a mistake that Plaintiff was included in the Plan, Drobocky had Plaintiff removed from the Plan. (Docket No. 70, at 5-6.) This change was originally reflected by a handwritten correction in the 2006 Plan document adding the job title of "Executive Assistant" as an exclusion, and in subsequent Plan documents as a typeset correction. (Docket No. 98-13.)

James Arnold, a Pensys employee, testified that Plaintiff told him that "she was never supposed to be in the plan to begin with" based on "an agreement she had with Dr. Drobocky," although he admitted he did not know the nature of that agreement or what Plaintiff was given in exchange for coming out of the Plan. (Docket No. 93-8; *see also* Docket No. 93-10; 93-11; 93-12.) Arnold also stated that all of his contact regarding the Plan was through Plaintiff and reiterated several times that she communicated to him that her inclusion in the Plan was a "mistake." (*Id*.) However, Plaintiff does not recall ever speaking with Arnold at any point.

Plaintiff admits that she was aware that in 2005-2009 she was not getting retirement benefits and not being treated as part of the Plan. (Docket No. 93-5; *see also* Docket No. 93-6.) However, she contends that the "I will take care of you" statement by Drobocky is the reason she did not inquire into or challenge the decision to remove her from the Plan. (*See* Docket No. 70, at 9 ¶ 31.) Sometime in 2009, Drobocky closed out the 2002 Plan. As a result of this closing out of the 2002 Plan, Drobocky gave his employees the option of cashing out, which almost all chose to do. Because Plaintiff

handled payroll and processed paperwork for PenSys, she learned what other employees received from the cash out. Accordingly, Plaintiff states she started to understand how much retirement she could have realized by participating in the Plan.

Plaintiff voluntarily terminated her employment with Defendants in December 2011. (Docket No. 93-16.) Although Plaintiff states she was informed she would be "taken care of" in regards to retirement funds, Defendants never reimbursed her other than a $6,000.00 payment to her IRA account in 2010. (Docket No. 70, at 8.) Plaintiff filed the Complaint, (Docket No. 1), giving rise to this action on May 21, 2012.

DISCUSSION

Plaintiff alleges violations of the Age Discrimination in Employment Act (ADEA) and the Employee Retirement Income Security Act (ERISA) in Count I. (Docket No. 70, at 9-10.) The basis for her ADEA claim is that she was improperly removed from the Plan because of her age. The apparent basis for her ERISA claim is that she was improperly removed from the Plan without written notification and without informing her of her right to object to the removal or to participate in the Plan's administrative appeals process. In Count II, Plaintiff alleges a violation of the Kentucky Wage and Hour Statute, KRS § 337.385. In Count III, Plaintiff alleges a Fraud by Inducement claim. (Docket No. 70, at 11-12.) In Count IV, Plaintiff alleges a Fraud by Omission claim. (*Id*. at 12.) Count V and Count VI allege breach of contract and equitable estoppel under ERISA claims, respectively. (*Id*. at 12-13.)

Motions to Exclude by Plaintiff and Defendants (Docket Nos. 100, 102)

Regarding Defendants' Motion to Exclude Plaintiff's Expert Mark Johnson, (Docket No. 102), and Plaintiff's Motion to Exclude Defendants' Expert Dr. Scott Bauries, (Docket No. 100), the Court will **GRANT in part** and **DENY in part** these Motions. The vast majority of these experts' testimony and opinions are legal conclusions, namely whether Defendants' purported actions are violations of ERISA. Expert testimony is not proper for issues of law. *U.S. ex rel. Compton v. Midwest Specialities Inc.*, 142 F.3d 296, 301 (6th Cir. 1998). Accordingly, the Court will **GRANT in part** both Defendants', (Docket No. 102), and Plaintiff's, (Docket No. 100), Motions to Exclude as to the legal conclusions made by the experts in their reports.[3] However, as to the benefit calculations, the Court will **DENY in part** these Motions. (Docket Nos. 100, 102.)

ADEA Claim

The Court finds Plaintiff's claim of age discrimination under the ADEA is barred by the applicable statute of limitations and, therefore, it need not address the merits of this claim. The ADEA states that "no civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." 29 U.S.C. 626(d)(1). An EEOC charge must be filed within either 180 or 300 days of the date the alleged unlawful discrimination occurs. *Id*.

---

[3] In any event, the Court notes that the legal arguments advanced by these experts are presented in both parties' extensive briefing on their respective Motions for Summary Judgment. (Docket Nos. 93, 95.)

Plaintiff's claim of age discrimination is founded upon her alleged exclusion from the Plan. Plaintiff was excluded from the Plan no later than 2006 and was informed in 2005 she was being excluded from the Plan. Therefore, under the ADEA she would have been required to file a charge with the EEOC no later than 2007, and her complaint filed within 60 days of the filing of that charge. There is no indication that she ever filed a charge of discrimination and, in any event, Plaintiff's Complaint in this case was filed on May 21, 2012, (Docket No. 1). Plaintiff has not responded to Defendants' contention that her ADEA claim is time-barred. Accordingly, the Court will **GRANT** Defendants summary judgment on the ADEA claim.

ERISA Claims

As an initial matter, the Court notes that "the administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). Plaintiff has made no claim for benefits under the Plan and, therefore, has failed to exhaust her administrative remedies as to her ERISA claims. While Plaintiff contends that the Plan documents did not provide for pursuit of administrative remedies, a review of those documents show there was a claims review procedure. (*See* Docket No. 109-2, at 16-17.) Therefore, for this reason alone, Defendants are entitled to summary judgment on the ERISA claims.

Putting aside the failure of Plaintiff to exhaust her ERISA claims, the Court notes that the predicate to all of her claims is that there was an "amendment" to the Plan. Defendants contend that the modification at issue was not an "amendment" and

was merely correction of a scrivener's error. (*See* Docket No. 93-32, at 19-21.) ERISA cases recognize a scrivener's error doctrine that is applicable to employee benefit plans. A scrivener's error may be corrected without engaging the formal Plan amendment process. This doctrine has both "strong" and "weak" versions that apply to employee benefit plans. The "weak" version is drawn from contract law and requires that for an element of a Plan to be considered a scrivener's error the parties must have been mutually mistaken about the Plan element in question. *Int'l Union of Elec., Salaried, Machine, & Furniture Workers v. Murata Erie N. Am. Inc.*, 980 F.2d 889, 907 (3d Cir. 1992). The "strong" version is drawn from trust law and holds that any mistake, even one in which only the settlor was mistaken, may be corrected to effectuate the intent of the settlor. *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 950 (8th Cir. 1994). Because Defendants are entitled to summary judgment based on Plaintiff's failure to exhaust her administrative remedies, the Court need not decide whether a scrivener's error exists or which version of the doctrine is applicable, although the "strong" version would appear to make the most sense given ERISA's trust-law foundations. However, even assuming an "amendment" occurred and Plaintiff had exhausted her claims, Defendants would nevertheless also be entitled to summary judgment on the ERISA claims for the reasons discussed below.

I. Breach of Fiduciary Duty Claim

Plaintiff contends that by "amending" the plan and failing to inform her of that amendment, Defendants breached a fiduciary duty to her. However, even assuming there was an "amendment," it does not give rise to a breach of fiduciary duty claim. A breach of fiduciary duty claim cannot be based on amending or modifying a plan.

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-44 (1999) ("Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries . . .When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust.") (citations omitted). An "employer's act of amending its plan" does not constitute "an exercise of fiduciary duty." *Id*. at 444. This is true regardless of any contention that an amendment was discriminatory because "ERISA does not mandate that 'employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits.'" *Id*. (citation omitted). Essentially, the applicable case law delineates a distinction between a settlor and a fiduciary of a trust, and indicates that amending a plan is an act performed by the former. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 889-90 (1996) (finding when employers modify a plan they are analogous to settlors of a trust and are not acting as fiduciaries); *Campbell v. BankBoston*, 327 F.3d 1, 6 (2003) ("The act of amending the terms of a plan is not one to which a fiduciary duty applies."). Furthermore, even if Drobocky was both a fiduciary and settlor, "[t]he ERISA fiduciary duty doctrine envisions that one entity will have fiduciary duty attach to some activities but not others; the existence of a duty turns not on who acts but on the nature of the action." *Campbell*, 327 F.3d at 6-7.

Plaintiff argues that the facts of the applicable United States Supreme Court cases are distinguishable from the facts of this case. (Docket No. 112, at 5-7.) While the Court finds her arguments unavailing, it notes that, in any event, her claim is barred by the applicable statute of limitations.

29 U.S.C. § 1113 requires that an action be commenced "with respect to a fiduciary's breach of any responsibility, duty or obligation" after the earliest of:

> **(1)** six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> **(2)** three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Plaintiff's testimony indicates she knew of her "exclusion" as early as 2005. Therefore, the shorter, three-year statute of limitation applies. Even assuming that Plaintiff is alleging fraud or concealment regarding the fiduciary duty claim, such action should have been commenced no later than 2011—six years after 2005. Plaintiff's Complaint in this case was filed on May 21, 2012. (Docket No. 1.)

While Plaintiff argues that the statute of limitations should be tolled because of the alleged fraud inherent in Drobocky's "I will take care of you" statement, that statement is completely unrelated to any purported breach of fiduciary duty resulting from her exclusion from the Plan. At all times Plaintiff understood she was being treated as being excluded from the Plan and there was never any fraud or concealment as to whether she was included in the Plan.

Plaintiff also argues that her claim should not be time-barred because she never received an adequate notice of her denial of benefits, such as a benefits termination notice. (*See* Docket No. 112, at 17-22.) However, Plaintiff has never made a claim for benefits under the Plan. Moreover, no formal letter or notice is required as long as a

denial is "clear and unequivocal." *Redmon v. Sud-Chemie Inc. Retirement Plan*, 547 F.3d 531, 538-39 (6th Cir. 2008). Plaintiff testified she knew she was not included in the Plan and that Drobocky communicated to her as much. Thus, even assuming Plaintiff had made a claim, the denial was "clear and unequivocal."

Accordingly, the Court will **GRANT** Defendants summary judgment on the ERISA claim premised on an alleged breach of fiduciary duty.

II. Failure to Comply With the Statutory Requirements of ERISA Claim

Although very unclear and ambiguous which alone would merit its dismissal, Plaintiff appears to be making a claim for failure to comply with ERISA statutory requirements. ERISA provides that certain notices must be provided to plan participants, including notice of any amendment to a plan if they occur after the Summary Plan Description is issued. However, deposition testimony indicated that Plaintiff understood she was not included in the Plan. In fact, Plaintiff herself testified that she was aware she was not part of the Plan as early as 2005. It would strain logic and common sense to now permit Plaintiff to make a claim based on the notion she should have been provided "notice" for an "amendment" of which she was clearly aware. Moreover, there are no formal requirements for how modifications are to be described and Plaintiff was sufficiently on "notice" of the modification. (*See* Docket No. 93-32, at 17.)

Furthermore, Plaintiff's claim would be time-barred even if it was a cognizable. Since claims not alleging breach of fiduciary duty are not governed by 29 U.S.C. § 1113, courts are required to "borrow" a state's statute of limitations that is analogous

to the claim asserted. *Meade v. Pension Appeals Review Committee*, 966 F.2d 190, 194-95 (6th Cir. 1999) (stating "the court should apply the most analogous state law statute of limitations."). In Kentucky, a five-year statute of limitations period applies to claims based upon ERISA's statutory protections. *Fallin v. Commonwealth Industries, Inc.*, 695 F.3d 512, 515 (6th Cir. 2012); *see also Clemons v. Norton Healthcare, Inc. Ret. Plan*, 2013 WL 5437646, at *3 (W.D. Ky. Sept. 27, 2013). Accordingly, Plaintiff's filing of the Complaint in 2012, (Docket No. 1), was untimely and the Court will **GRANT** Defendants summary judgment on this claim.

III.     Equitable Estoppel Claim

To invoke an equitable estoppel claim with respect to a pension plan a plaintiff must show "the traditional elements of estoppel . . . plus (1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel." *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 444 (6th Cir. 2010). The traditional "elements of an equitable estoppel claim are: 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation." *Id*. at 442.

Plaintiff fails to satisfy several of these elements. First, Plaintiff has not provided any indication that she was unaware of the true facts, namely that she was not included in the Plan. In fact, Plaintiff explicitly testified that she was well aware she was not included in the Plan. Second, Plaintiff has not produced or even alleged that Defendants made any representations regarding *the Plan* that were fraudulent. Essentially, any alleged misrepresentation was not about the Plan, but rather, to what extent Drobocky would "take care of" Plaintiff. Equitable estoppel in this context presumes there was some misrepresentation with regard to *the ERISA plan itself* that the Plaintiff relied upon without knowing the true facts. *See Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991) (affirming district court's equitable estoppel of defendants from denying plaintiffs insurance benefits because it found that defendants had represented to plaintiffs they would be receiving insurance benefits in retirement). The alleged misrepresentation by Drobocky has nothing to do with the Plan. Finally, Plaintiff has presented no written misrepresentations made by Defendants. Notably, Plaintiff concedes that any alleged misrepresentation was made orally through the alleged statement of Drobocky in telling her "I'll take care of you." (*See* Docket No. 112, at 24-26.) Accordingly, the Court will **GRANT** Defendants summary judgment on the equitable estoppel claim.

Kentucky Wage and Hour Statute Claim

Defendants contend that Plaintiff's claim under the Kentucky Wage and Hour statute, KRS 337.385, is not applicable to pensions. (Docket No. 93-32, at 23-24.) Notably, Plaintiff has not addressed this contention in her extensive briefing.

Plaintiff's claim is based upon the premise that "wages" in KRS 337.010 includes pension or retirement benefits. KRS 337.010 defines "wages" as:

> [a]ny compensation due to an employee by reason of his or her employment, including salaries, commissions, vested vacation pay, overtime pay, severance or dismissal pay, earned bonuses, and any other similar advantages agreed upon by the employer and the employee or provided to employees as an established policy.

Other Kentucky courts have found that pension or retirement benefits are not "wages" under KRS 337.010. In concluding they are not wages, a court in this district stated:

> The plaintiff argue the term "wages" encompasses contributions owed to the Trust Funds under the CBA . . . Payments owed by employers directly to benefit funds are not one of the enumerated items in the statute (i.e. "salaries, commissions, vested vacation pay, overtime pay, severance or dismissal pay, earned bonuses"). Nor do they fall within the category of "other similar advantages agreed upon by the employer and the employee or provided to employees as an established policy." The key is the word "similar"; the general provision only encompasses "advantages" that are of the same type of those listed before it. And the enumerated items consist only of payments made directly by the employer to the employee, not contributions owed by the employer to third-party funds.

*Electrical Workers Local 369 Benefit Fund v. Marine Electric Company*, 2013 WL 594235, at *5 (W.D. Ky. Feb. 15, 2013) (citation omitted); *see also Francis v. Marshall*, 684 F. Supp. 2d 897, 911 (E.D. Ky. 2010) (stating "benefits such as retirement plans, health and disability insurance, and life insurance are not 'wages' as a matter of law" and noting "Kentucky courts have long held that such benefits are 'fringe benefits'—not wages or salary."); *Caldwell County Fiscal Court v. Paris*, 945 S.W.2d 952, 954 (Ky. Ct. App. 1997) (stating that providing health insurance "does not constitute the payment of 'compensation' or 'salary'" under the Kentucky Constitution and noting that furnishing benefits, such as retirement plans and insurance, are fringe benefits and not

considered to affect the pay, wages, or compensation of the employee). Consistent with the analysis from these Kentucky cases, this Court believes "that if the Kentucky Supreme Court was asked to determine whether the term 'wages' in [the Kentucky Wage and Hour Statute] encompasses unpaid contributions owed by an employer directly to a benefit fund, it would find that the answer to that question is no." *Electrical Workers Local 369 Benefit Fund*, 2013 WL 594235, at *5.

In any event, Plaintiff's claim would be barred because the relevant statute of limitations has run. Since no statute of limitations is proscribed in the relevant statutory scheme, KRS 413.120 provides a five-year statute of limitations for an "action upon a liability created by statute when no other time is fixed by the statute creating liability." Plaintiff testified she was aware as early of 2005 that she was not receiving employee contributions. Therefore, any action should have been filed by 2010 to be timely. Plaintiff's Complaint in this case was filed on May 21, 2012. (Docket No. 1.)

Accordingly, the Court will **GRANT** Defendants summary judgment as to the Kentucky Wage and Hour Statute claim.

Fraud By Inducement

In order to maintain an action of Fraud by Inducement, Plaintiff "must establish six elements of fraud by clear and convincing evidence as follows: a) [a] material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999). As discussed further below, the Court finds a reasonable jury could conclude Plaintiff has established these

six elements and, therefore, the Court will **DENY** Defendants summary judgment on this claim.

As for the first three elements, a reasonable jury could conclude the "I will take care of you statement" is a material representation which was false and was known to be false or made recklessly because it implied that Drobocky would fund Plaintiff's retirement such that she would receive as much as she would have received as a participant in the Plan. *See Major v. Christian County Livestock Market*, 300 S.W.2d 246, 249 (Ky. 1957) (holding "[o]ne may commit fraud in the inducement by making representations as to his future intentions when, in fact, he knows at the time the representations were made he had no intention of carrying them out"). As for the last three elements, a reasonable jury could conclude that Drobocky made this statement to induce Plaintiff to not challenge her exclusion from the Plan and that Plaintiff acted in reliance by not challenging her removal from the Plan and/or assuming Drobocky would fund her retirement in a manner equivalent to what she would have received under the Plan, thereby causing her injury.[4]

---

[4] Defendants have argued that Plaintiff's fraud by inducement claim is barred by the applicable statute of limitations. Pursuant to KRS 413.120(12) "[a]n action for relief or damages on the ground of fraud or mistake" has a five-year statute of limitations." The alleged "I will take care of you statement" was said sometime in 2005 and Plaintiff's Complaint was filed on May 21, 2012. (Docket No. 1.) However, under the federal discovery rule "a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." *Guilbert v. Gardner*, 480 F.3d 140, 148-49 (2d Cir. 2007). Plaintiff would not have discovered Drobocky did not intend to "take care of her" until, at the earliest, in either 2009, 2010, or 2011. In 2009, Plaintiff observed how much employees under the Plan received upon cashing out. In 2010, Plaintiff received $6,000 in an IRA. In 2011, Greene decided to retire and "began asking Drobocky . . . about her retirement and his promise to 'take care of' her." (Docket No. 99, at 7.) As a result, the applicable statute of limitations does not bar this claim.

Fraud By Omission

In order to maintain an action of Fraud by Omission, Plaintiff "must prove: a) that the defendants had a duty to disclose [a] fact; b) that defendants failed to disclose that fact; c) that the defendants' failure to disclose the material fact induced the plaintiff to act; and d) that the plaintiff suffered actual damages." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. Ct. App. 2003). Defendants disclosed to Plaintiff that she was not part of the Plan or, depending on one's view, no longer part of the Plan.[5] Thus, Plaintiff is unable to maintain her Fraud by Omission claim.

Moreover, a duty to disclose is created only where a confidential or fiduciary relationship between the parties exists, a statute imposes such a duty, or a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure. *Id*. As discussed above, Drobocky was acting as settlor of a trust and, therefore, the requisite fiduciary relationship is not present.[6] Accordingly, the Court will **GRANT** Defendants summary judgment on this claim.

Breach of Contract Claim

As for the breach of contract claim, Defendants have noted that "Plaintiff makes no argument [that the 'I will take care of you'] representation constitutes a contract

---

[5] Plaintiff's Second Amended Complaint establishes that the Fraud by Omission claim is premised on the allegation that Defendants "had the duty to disclose that Plaintiff would not be receiving retirement benefits in accordance with the terms of its Defined Benefits Plan" and "Defendants failed to disclose that fact." (Docket No. 70, at 12.)

[6] The Court does not interpret Plaintiff's claim to be that Drobocky, as speaker of the statement "I will take care of you," had a duty to disclose Plaintiff would not be receiving retirement benefits in accordance with the terms of the Plan. In any event, in such circumstances Drobocky would not have had the requisite duty to disclose.

between the two, and further, cannot say that if there was a contract, that Dr. Drobocky did not perform the contract because Dr. Drobocky did in fact deposit funds in an IRA account for Plaintiff." (Docket No. 109, at 16.) The Court agrees with this assessment. The Court notes that it is evident from Plaintiff's Second Amended Complaint, (Docket No. 70, at 12-13), that her Breach of Contract claim is based on the allegation that Defendants failed to "fund her retirement consistent with the provisions of its Defined Benefits Plan," not the statement by Drobocky—which in any event is clearly too indefinite to constitute an enforceable contract.

Additionally, this claim would be barred by the applicable statute of limitations. Pursuant to KRS 403.120(1) "an action upon a contract not in writing, express or implied" also has a five-year statute of limitations. Plaintiff testified she was aware as early of 2005 that she was not receiving employee contributions. Therefore, the breach of contract claim should have been filed by 2010 to be timely. Plaintiff's Complaint in this case was filed on May 21, 2012. (Docket No. 1.) Accordingly, the Court will **GRANT** Defendants summary judgment on the breach of contract claim.

CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment, (Docket No. 93), is **GRANTED in part** and **DENIED in part**. The only remaining claim for trial is the Fraud by Inducement claim. Plaintiff's Motion for Summary Judgment, (Docket No. 95), is **DENIED**. Plaintiff's Motion to Exclude Defendants' Expert Dr. Scott Bauries, (Docket No. 100), and Defendants' Motion to Exclude Plaintiff's Expert Mark Johnson, (Docket No. 102), are **GRANTED in part** and **DENIED in part**.

IT IS SO ORDERED.

Date:

cc: Counsel