UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:12-CV-00078-TBR

BERNICE F. GREENE                                                                                          Plaintiff,

v.

DR. OLES B. DROBOCKY, DMD MS,
and DROBOCKY ORTHODONTICS, PSC                                                          Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff Bernice F. Greene's Motion to alter or amend judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. (Docket No. 195.) Defendants Dr. Oles B. Drobocky, DMD MS, and Drobocky Orthodontics, PSC, ("the Practice"), have responded, (Docket No. 199), and Greene has replied, (Docket No. 200). Also before the Court is Drobocky's motion for attorneys' fees, (Docket No. 197), to which Greene has responded, (Docket No. 197), and Drobocky has replied, (Docket No. 205). Fully briefed, both matters stand ripe for adjudication. For the reasons set forth below, the Court will DENY both Greene's motion, (Docket No. 196), and Drobocky's motion, (Docket No. 197).

## Factual Background

As reflected in the Court's earlier memoranda, this case arises from a dispute concerning the retirement benefits to which Greene was entitled pursuant to her employment at Drobocky's orthodontic practice. In 2002, the practice implemented a Defined Benefits Plan offering in order to allow employees to save for retirement. Greene stated that when she was hired as a scheduling coordinator and executive assistant, Drobocky informed her that she was included in the Plan, that she could begin vestment after only one year, and that she would become fully vested after five years of service. Greene alleged that although Drobocky later informed her that she would be removed from the Plan due to her age, he assured

1

her, "I will take care of you." (*See* Docket No. 70 at 3.)  According to Greene, she understood Drobocky to mean that he would compensate her retirement at the same value as she would have received under the Plan.  Drobocky disputed Greene's characterization, arguing instead that she had been informed of her exclusion from the Plan and that he had made no representation that he would fund her retirement.

When a 2006 benefit statement listed Greene as a Plan participant, Drobocky informed the third-party plan administrator, PennSys, that this was a mistake.  PennSys then removed Greene from the Plan via a handwritten alteration of the Adoption Agreement, which added "Executive Assistant" to the list of excluded job titles.  The change was made by typeset correction to subsequent Plan documents.

When Drobocky closed out the Plan in 2010, the majority of the practice's employees opted to cash out.  Greene, who coordinated payroll and processed certain PennSys paperwork, then learned how much other employees received from the cash out and began to understand how much she could have realized had she participated in the Plan.  She voluntarily terminated her employment from the Practice in December 2011.

In the instant lawsuit, Greene contended that she was not "taken care of" as promised, but received only a $6,000.00 payment to her IRA account.  She alleged violations of the Age Discrimination in Employment Act (ADEA), the Employee Retirement Income Security Act (ERISA), and the Kentucky Wage and Hour Statute; she also raised claims of fraud by the inducement, fraud by omission, breach of contract, and equitable estoppel.  (Docket No. 70.)  The Court granted summary judgment to Drobocky on all claims except for fraud by the inducement.  Greene's fraud by the inducement case was tried before a jury, which found for Drobocky.  (*See* Docket No. 193.)  She now challenges this verdict, arguing that the Court should vacate its entry of summary judgment for Drobocky on the breach of fiduciary duty claim under ERISA.  In the alternative, Greene argues that the Court should retry her case.  Meanwhile, Drobocky seeks attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1), which provides that "in any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a

2

reasonable attorney's fee and costs of action to either party."  The Court will address each of the parties' motions in turn.

## Analysis

### I.        Motion to alter or amend judgment

A court may grant a motion to alter or amend pursuant to Federal Rule of Civil Procedure 59(e) "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law or to prevent manifest injustice."  *GenCorp v. Am. Int'l*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted).  Courts typically will consider additional evidence accompanying a Rule 59(e) motion only when it has been newly discovered; "to constitute 'newly discovered evidence, the evidence must have been previously unavailable."  *Id.*  Importantly, a Rule 59(e) motion does not provide plaintiffs another opportunity to argue the merits of their case.  *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374(6th Cir. 1998).

#### a.    Breach of fiduciary duties pursuant to ERISA

Greene first contends that the Court erroneously determined that Drobocky was not a fiduciary and that it improperly dismissed her claim for breach of fiduciary duty.  She points to *Curtis-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995), in support of her argument.  *Curtis-Wright* interpreted Section 402(B)(3) of ERISA, 29 U.S.C. § 1102(b)(3), which requires that each employee benefit plan provide "a procedure for amending such plan, and for identifying the persons who have authority to amend the plan."  The Supreme Court ultimately held that even a statement declaring that the company reserves the right to amend the plan at any time satisfies this requirement, broad though it may be.  In so determining, the Court emphasized that it did not suggest that plan beneficiaries may not prove "that unfavorable plan amendments were not properly adopted and are thus invalid."  *Id.* at 84.  Rather, so long as the company abides by the amendment procedures established by the plan, it has satisfied its fiduciary duty.  Greene argues that here, Drobocky failed to follow the Plan's amendment procedures, instead

"fraudulently alter[ing] the terms of the plan" by persuading a PennSys employee to alter the Plan document.  (*See* Docket No. 196 at 5.)

However, Greene fails to address the case law upon which the Court relied in its earlier memorandum opinion.  Contrary to Greene's argument, even if Drobocky "amended" the Plan without informing her, the would-be amendment would not necessarily give rise to a breach of fiduciary duty claim.  As the Court has explained, a claim for breach of fiduciary duty cannot be grounded upon amending or modifying a plan.  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-44 (1999) ("Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries . . . .  When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust.") (citations omitted).  The Court noted that an "employer's act of amending its plan" does not constitute "an exercise of fiduciary duty."  *Id.* at 444.  The relevant precedents distinguish the duties of a settlor from those of the fiduciary of a trust and place the act of amending a plan squarely among the duties of the former.  *See Lockheed Corp. v. Spink*, 517 U.S. 882, 889-90 (1996) (finding that when employers modify a plan they are analogous to settlors of a trust rather than fiduciaries); *Campbell v. BankBoston*, 327 F.3d 1, 6 (2003) ("The act of amending the terms of a plan is not one to which a fiduciary duty applies.").

*Curtis-Wright* does not discredit the case law upon which the Court relied.  Although the Supreme Court noted that ERISA plaintiffs may raise claims for improper plan amendments, such claims are distinct from those for breach of fiduciary duty.  The Court will not depart from the clear precedent indicating that no breach of fiduciary claim arises when an employer acts as a settlor of the plan.

### b.  Statute of limitations

Greene next argues that the Court erred in its determination that her breach of fiduciary claim was time-barred by 29 U.S.C. § 1113.  This statute requires that an action be commenced "with respect to a fiduciary's breach of any responsibility, duty or obligation" after the earliest of:

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

The Court concluded that pursuant to Greene's testimony that she learned of her "exclusion" as early as 2005, the three-year statute of limitations applied. Even under the more generous six-year period applicable to cases of fraud or concealment, Greene should have commenced her action no later than 2011. Because she filed her complaint on May 21, 2012, the Court concluded that this claim was time-barred.

Greene now points to statutory language requiring every employee benefit plan to "provide adequate notice in writing to any participant or beneficiary whose claim under the plan has been denied setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). Because Greene did not receive adequate notice of termination of coverage and relevant appeal procedures, she reasons that the time bar for her claim was never triggered. However, there is no evidence that Greene ever made a claim for benefits pursuant to the Plan rules; accordingly, no denial letter was issued. What is more, Greene testified that Drobocky communicated to her that she was not included in the plan. Even if she had made a claim, therefore, the denial of coverage was already "clear and unequivocal." *See Redmon v. Sud-Chemie Inc. Retirement Plan*, 547 F.3d 531, 538-39 (6th Cir. 2008) (noting that a cessation of payment "was just as clear and unequivocal as sending a letter stating that [a claimant's] benefits had been denied."). Greene was not deprived of notice to which she was entitled.

### c.   Objections to Dr. Bauries' qualifications and testimony

Finally, Greene maintains that the Court committed clear error by allowing Dr. Scott Bauries to testify as an expert witness.  Although Greene continues to minimize Dr. Bauries' qualifications, the Court is convinced that it did not commit clear error by admitting him as an expert.  The Court need not recite Dr. Bauries' curriculum vitae here; it will suffice to say that his conclusions rested upon a reliable foundation and were grounded in his expertise.  Greene had the opportunity to convince the jury that Dr. Bauries' testimony was not worthy of confidence.  Despite her efforts, the jury apparently found Dr. Bauries credible; at the very least, it arrived at the same conclusion that he did.  The Court remains persuaded that Dr. Bauries' qualifications entitled him to offer expert testimony.  The weight afforded to such testimony, of course, was for the fact-finder to determine.  *See, e.g.*, *United States v. Stafford*, 2011 WL 5008406, at *2 (N.D. Ohio 2011) ("The trial court acts as gatekeeper, admitting expert testimony that is reliable and leaving to the jury the question of how much weight, if any, should be accorded to the expert's conclusions.  Exclusion of expert testimony is the exception, not the rule.") (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2001)).

Greene also contends that the Court improperly allowed Bauries to testify that the handwritten exclusion in the Adoption Agreement constituted an attempt to correct a scrivener's error.  She argues that Bauries improperly testified to a legal conclusion—that is, that the notation of the Plan document constituted correction of a scrivener's error rather than a fraudulent act.  The Court disagrees.  Greene contends, "Dr. Bauries' 'expert opinion' was essentially a 'wish list' of how Defendants wanted this Court and fact finder to view the law in this case."  (Docket No. 196 at 17-18.)   Undoubtedly, Greene's theory of the case conflicts with Dr. Bauries' testimony.   However, admission of such testimony did not constitute a clear error of law.   The jury was capable of drawing its own conclusions as to whether the alteration was motivated by fraud; its verdict reflects that it did not subscribe to this theory.  That the jury found Dr. Bauries' testimony convincing is not a basis for its exclusion, particularly in light of the expert testimony that Greene also offered.

Finally, Greene insists that the Court improperly adopted Dr. Bauries' position in its Memorandum Opinion granting summary judgment to Drobocky on Greene's ERISA claims. Contrary to Greene's argument, however, the Court did not conclude that Drobocky amended the plan at all. Instead, it determined that because Greene failed to exhaust her administrative remedies prior to commencing her lawsuit, Drobocky was entitled to summary judgment, regardless of whether the scrivener's error doctrine applied. (*See* Docket No. 136 at 7-8. ("Because Defendants are entitled to summary judgment based on Plaintiff's failure to exhaust her administrative remedies, the Court need not decide whether a scrivener's error exists. . . .").) This conclusion accords with Sixth Circuit precedent: "[T]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979. 986 (6th Cir. 1991). The Court will not vacate its judgment on this basis.

Greene has not demonstrated that the Court committed clear errors of law with regard to her breach of fiduciary duty claim, the statute of limitations, or Dr. Bauries' testimony. Moreover, the Court is not convinced that she will suffer manifest injustice as a result of the judgment entered pursuant to the jury's verdict. Accordingly, the Court will deny Greene's motion to alter or amend judgment.

## II.    Motion for attorneys' fees

The Court next turns to Drobocky's motion for attorneys' fees. ERISA affords courts the discretion to award reasonable attorneys' fees to either party who has achieved some degree of success on the merits." 29 U.S.C. § 1132(g)(1); *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). The Sixth Circuit has approved an award of attorneys' fees to defendants in an ERISA case. *See Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 445 (6th Cir. 2006). Moreover, the Sixth Circuit has held that "[a] summary judgment on the basis of the defense of the statute of limitations is a judgment on the merits." *Nathan v. Rowan*, 651 F.2d 1223, 1226 (6th Cir. 1981).

7

Once a party has established some degree of success on the merits, a court will evaluate the request for attorneys' fees based on the following five factors:

1.  The degree of the opposing party's culpability or bad faith;

2.  The opposing party's ability to satisfy an award of attorney's fees;

3.  The deterrent effect of an award on other persons under similar circumstances;

4.  Whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and

5.  The relative merits of the parties' positions.

*Moore*, 458 F.3d at 445 (citing *Sec. of Dep't of Labor v. King*, 775 F.2d 555, 559 (6th Cir. 1985)).  The Sixth Circuit has emphasized that because these factors are not required by statute, they are not dispositive; rather, they are "simply considerations representing a flexible approach." *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005).  Moreover, the fourth factor does not apply when fees are being awarded to a defendant rather than a plaintiff.  *See Moore*, 458 F.3d at 446 (affirming award of fees after trial court determined that the fourth factor did not apply); *see also Anita Foundations, Inc. v. ILGWU Nat'l Reitrement Fund*, 902 F.2d 185, 191 (2d Cir. 1990) (explaining that the "benefit to others" factor does not apply where the employer is seeking fees).

There can be no doubt that Drobocky demonstrated success on the merits:  after winning summary judgment on all but one of Greene's claims, Drobocky prevailed on the remaining claim at trial.  Therefore, the Court turns to the factors enumerated above.

Drobocky contends that Greene was evasive throughout this litigation, constantly changing her theories such that Drobocky was left to guess at the claims against him.  Generally speaking, the Court would not disagree with Drobocky's characterization.  As the Court noted in its previous memorandum opinion, Greene's claims were "very unclear and ambiguous."  (Docket No. 136 at 11.)  Moreover, Greene herself testified that she was aware that she was not part of the Plan as early as 2005 and that "it

8

would strain logic and common sense" to permit her to raise a claim that she was entitled to "notice" for an "amendment" of which she was clearly aware.  (Docket No. 136 at 11.)  Moreover, she did not attempt to exhaust administrative remedies before bringing her claims, which were raised after the limitations period had elapsed.

Nonetheless, the Court accepts Greene's insistence that she did not bring the lawsuit with a culpable motive.  "Simply making a losing legal argument is not enough to trigger the obligation to pay fees under 29 U.S.C. § 1132(g)(1)."  *Warner v. DSM Pharm Chems. North Am.*, 677 F. App'x 6777, 681 (6th Cir. 2011).  At this late stage, the Court need not consider whether Greene ever enjoyed a likelihood of success as to her claims, each of which ultimately failed.  Instead, it is sufficient to say that Greene did not initiate her lawsuit in bad faith or with vexatious intent, despite its legal weaknesses.  The Court perceives no deliberate misconduct or bad faith on Greene's part.

As to the second factor, Greene argues that reimbursing Drobocky's attorney fees would create a significant hardship for her.  She explains that for the last two and a half years, she has served as a full-time volunteer for an overseas mission group and that she has no retirement funds to draw from. Drobocky responds that although Greene has chosen to volunteer rather than work for a wage, she is fully able to do so.  Moreover, Drobocky contends that Greene owns rental property from which she derives an income.  Given the limited nature of the parties' argument on this point in their briefings and the lack of record evidence to this effect, the Court will consider it to be neutral as to the award of attorneys' fees.

Greene argues that awarding attorneys' fees would not have a deterrent effect, as nothing in the record indicates deliberate misconduct.  The Court agrees.  *See O'Callaghan v. SPX Corp.*, 442 F. App'x 180, 186 (approving a district court's denial of attorneys' fees based partially on this rationale).  Not all of Greene's claims were dismissed as untimely; rather, some were colorable claims on which she simply lost.  The Court need not discourage plaintiffs from bringing such claims in the future, particularly in the

absence of improper litigation tactics or otherwise vexatious acts. This factor weighs against an award of fees.

Although Greene argues that she sought to confer a common benefit upon Drobocky's current and future employees, the Court need not consider this argument. As noted above, this factor does not apply when fees are being requested by a defendant rather than a plaintiff. *See Moore*, 458 F.3d at 446; *Anita Foundations, Inc.*, 902 F.2d at 191. Accordingly, this factor is neutral.

Finally, the Court turns to the relative merits of the parties' positions, which is closely related to the first factor of culpability or bad faith. Here, both parties set forth positions that had merit. Despite Drobocky's ultimate success, Greene's claims were not frivolous; as noted above, one of her claims proceeded to trial. Having determined that each factor is either neutral or weighs against awarding attorneys' fees, the Court will deny Drobocky's motion.

## Conclusion and Order

Therefore, for the reasons set forth above, IT IS HEREBY ORDERED that Greene's motion to alter or amend judgment, (Docket No. 196), is hereby DENIED. IT IS FURTHER ORDERED that Drobocky's motion for attorneys' fees, (Docket No. 197), is DENIED.